[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 STATEMENT OF THE CASE
The plaintiff and the defendants are adjoining property owners of real property located in a residential subdivision on Sherwood Drive in North Haven. The parties are in dispute over the location of the boundary line between their properties and the claim by the defendants to ownership by adverse possession of an eight foot strip of land in the vicinity of the property line.
At trial, both sides offered expert testimony as to the location of the boundary line and numerous maps, plot plans, deeds and photos were introduced into evidence.
The properties affected are known as 20 Sherwood Drive (the Cacace property) and 16 Sherwood Drive (the Lewandowski property). Their parcel designations on the subdivision map are lots 18 and 19, respectively.
 DISCUSSION I The Boundary Line
At issue wit respect to the boundary line is whether it is actually where the plaintiff's land surveyor has delineated it or eight feet to the east where the defendants' surveyor claims it is.
Both experts attribute this controversy to an error made by the surveyor who plotted the subdivision originally. Taking that original map and subsequent corrected maps, Lawrence W. Fisher presented his own CT Page 4717 updated survey map to support the plaintiff's position (Exhibit A). Mr. Fisher demonstrated that both lots in question were conveyed pursuant to the corrected subdivision map of 1968, Exhibit B. On that map, boundary lines between lots 15 through 19 are shown as being shifted eight feet to the west of where they are shown on the original map, Exhibit E.
Support for Mr. Fisher's position is also found in the location in the field of monuments and pipes he shows on his map. He found a pipe at the eastern terminus of the rear boundary line of lots 13 — 19. Another pipe was found at the eastern corner on that rear boundary line of lot 15. A cross top concrete monument was found at the eastern corner on the same rear line of lot 17. That monument is exactly 200 feet to the east of the point Mr. Fisher indicates is the boundary between lots 18 and 19, the lots of the plaintiff and the defendants. This is what their deeds call for and thus the map matches the monuments on the ground.
This "eight foot shift" is also apparent when the area on the maps which was to be "Tracy Drive" is examined. This land runs along the westerly boundary of lot 19, the defendants' property. Monuments were set on both sides of"Tracy Drive." These are shown on the 1965 original map, Exhibit C. On the revised and correcting maps of 1968, Exhibits D and F, these two monuments which are depicted on the respective property lines, now appear eight feet to the east of the revised property lines on each side of "Tracy Drive."
The court can give no credence to Exhibit 10, offered by the defendants, on the location of Tracy Drive. It is designated as a "Zoning Location Survey" only. The preparer does not appear to have considered the actual location of the 50 foot roadbed with respect to the monuments.
It is also significant that the "offsets" for the placement of the houses on lots 18 and 19 as shown on Exhibit E, the final subdivision map, reflect distances to the property line as posited by Mr. Fisher. They do not measure out if the line is moved eight feet to the east.
On the basis of these considerations, and weighing the total testimony and evidence, the court concludes that the boundary line between lots 18 and 19 is the one advanced by the plaintiff as shown on Exhibits A and H.
 II Adverse Possession
The area the defendants claim by adverse possession is the same eight CT Page 4718 foot strip of land discussed above in connections with the boundary line dispute.
It is the defendants position that they have treated this area as their own since October 1973 by mowing, watering, fertilizing and trimming trees. They also used the rear portion for parties, with games played there on occasion. They introduced photographs of family members posing in the disputed area. Since 1973, a tent was erected on a portion of the parcel about six times.
The plaintiff disputes this claim and testified that her husband planted a tree "at the corner" on the boundary line between the parcels and on line with a pine tree on the boundary line depicted by Mr. Fisher. On those occasions when volleyball was played, it was set up in front of the tree planted by Mr. Cacace. She places the number of family functions at which the games played lapped over and onto her property as one every three years. Mary Lewandowski admitted that in some years, no family functions were held. Mrs. Cacace also stated she had never been told by the defendants the parcel was theirs and she was never told to stay off the area.
As for the volleyball games, apparently the net was erected at a right angle to the property line and one supporting stake may have been placed on the Cacace property. (Testimony of Andrew D'Agostino).
The parties also disagree about the location of a stone wall running roughly along the rear of some of the properties bordering the Crosswards Development property. Mrs. Cacace testified it ended short of the boundary line set by Fisher, while Mr. Lewandowski state it ran beyond that point.
The evidence in this case must also be examined in light of the relationship between these parties. Until the question arose, these families had been on friendly terms and people came and went in the area in dispute without the proverbial "second thought."
Ann Marie Piscatelli had been a baby sitter for the Lewandowski children between 1976 and 1980 and said the children "played all over the place" including the yard of lot 18, then owned by the predecessor in title of the Cacaces
The only direct conversations alleged to have occurred between the Lewandowskis and the owners of lot 18 concerning the property line were with Mr. Kip and Mr. Cacace. Both of these men are dead. Mr. Kip is quoted as having told Mr. Lewandowski that "where he was mowing was ok with him." Mrs. Lewandowski testified that she never told anyone this CT Page 4719 parcel was hers, and never discussed the line with the Cacaces.
As both parties have stated in their briefs, adverse possession is not favored in law and to prevail, a claimant must prove his case by clear and convincing evidence. Further, the claimed use must oust an owner of possession uninterruptedly for fifteen years by open, visible and exclusive possession. (Citations omitted).
Both parties have quoted from prior decisions of this court in evaluating the evidence presented on claims of adverse possessions.
In evaluating the evidence in this case, the court finds the occasional activity involving family members and guests at the family functions to be so sporadic and of such short duration as to be inconsequential. In a residential area, such activity is not apt to attract the attention of a neighbor and certainly not provoke a "get off my property" warning unless the parties are at odds or they are aware the user is asserting an adverse possession claim.
Normally, one tolerates such intrusions in the interests of neighborhood harmony and friendship — which apparently was the existing mood here until the plaintiff realized what the defendants were claiming. The only protection available to a good neighbor, if the defendants' contention is rewarded, is to build a fence or other barrier. These can be expensive, unsightly, and have disadvantages — they require laborious and time consuming trimming, for one thing.
It should also be noted that all of these occasional incursions were nonspecific. That is, the children ran into portions of lot 18, they played "all over the place," the supporting stakes for volleyball and tents were temporary. In sum, there was no defined area for the activity and it was not a case of control exerted continuously over a defined area to the exclusion of the owner.
The most consistent and extensive display of control executed by the defendants is the activity along the "boundary line," and in view of the court's ruling above, that is the line established by the Fisher survey.
Here, the defendants mowed, watered, fertilized and trimmed along a common boundary which no one had actually delineated by markers or a fence.
Lewandowski was attracted to the area because it had not been well kept and it detracted from his front yard. CT Page 4720
Whether the control exerted was "exclusive" is seriously questioned by the testimony of Mrs. Cacace and whether it was "hostile" is doubtful in view of the friendship between the parties. Mrs. Cacace testified that she mowed the lawn in this area, everyone crossed back and forth, and the children played there. The defendants' son mowed her lawn on occasion and he mowed in this area.
However, there is a more serious deficiency in the defendants' proof in that, combining the lawn care with the function usage, the possession and control still fall far short of what our appellate courts have indicated to be essential by such a claimant.
Both parties cite Meshberg v. Bridgeport City Trust Co., 1 Conn. App. 10
(1983) and Sands Associates v. Rios, 6 Conn. App. 84 (1986). The defendants' activities here do not approach the evidence advanced in these two cases, and both claimants were unsuccessful.
These defendant have the further burden of conflicting testimony, a friendly relationship between the parties, undefined borders, and, except for the lawn care, very sporadic, diverse, and ill defined usage.
 CONCLUSION
Judgement may enter for the plaintiff quieting title to the parcel in question in the plaintiff
The plaintiff is entitled to taxable costs.
Anthony V. DeMayo, Judge Trial Referee